Scott C. Borison (CA Bar No. 289456)
1900 S. Norfolk St. Suite 350
San Mateo CA 94403
(301) 620-1016
Scott@borisonfirm.com

Monica Hartsock, SBN 270114
LAW OFFICE OF MONICA HARTSOCK
4562 Hastings Ct.
Chino, California 91710
Telephone: (909) 536-1773
Monica@Hartsocklawfirm.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSIA LINDSEY,<br>on behalf of herself and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PATENAUDE & FELIX, APC.,<br>on behalf of itself and those similarly situated,<br><br>Defendants. | Case No. 5:20-cv-_2537<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMAND<br><br>1. DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF<br>2. VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT |

## CLASS ACTION COMPLAINT

Plaintiff, Aleksia Lindsey, ("Lindsey" or "Named Plaintiff") individually and on behalf of all other similar persons defined *infra* and by her undersigned attorneys, hereby brings this Class Action Complaint and Demand for Jury Trial against Defendant,

Class Action Complaint

Patenaude & Feliz, APC ("Patenaude" or "Named Defendant"), as the named defendant on behalf of a class of similar defendants defined *infra*, Lindsey and states:

## I.  INTRODUCTION

1.      The claims outlined herein exemplify certain unfair or unconscionable debt collection practices which have garnered headlines and damaged the economy for the past several years in which certain persons and entities involved in the debt collection field flout the law and which have embroiled Named Plaintiff and the putative class members ("Plaintiffs' Class")[1] she seeks to represent, who continue to suffer damages and losses directly and proximately caused by Patenaude's and other similarly situated debt collectors' ("Defendants' Class")[2] unsafe, unsound, and unconscionable debt collection practices on behalf of a California Corporation—i.e. Transworld Systems, Inc. ("Transworld").

2.      Transworld is not licensed as a law-firm but enters into standard and uniform contract(s) with Patenaude and other similar debt collectors which require it, as a non-law firm and non-attorney, to improperly direct and control the debt collection activities of the Named Defendant and Defendants' Class members in debt collection litigation throughout the country and California commenced to collect alleged consumer debts claimed to be owned by others.  Specifically, upon information and belief, Transworld's agreements with Patenaude and the Defendants' Class members have the following unfair and unconscionable requirements, general terms, and conditions:

---

[1]      The Plaintiffs' Class is defined *infra* at ¶ 35.
[2]      The Defendants' Class is defined *infra* at ¶ 52.

Class Action Complaint

a. Transworld has established an "Attorney Network" to attempt to collect the debt on behalf of fifteen private trusts that claim to own personal, consumer loans for educational purposes valued at $12 billion. Transworld and the Trusts, however, do not have adequate records to show clear title to these alleged loans.

b. Patenaude and the members of the Defendants' Class each agreed to be part of the Transworld Attorney Network and entered into standard and uniform retainer agreements with Transworld.

c. In Transworld's standard and uniform retainer agreements with Patenaude and members of the Defendants' Class, Transworld retains the "absolute right" to exclusively control certain aspects of the debt collection litigation including: (i) Transworld prohibits Patenaude and the Defendants' Class members from reviewing and editing any testimony prepared by it in support of the debt collection litigation; (ii) Transworld requires Patenaude and the Defendants' Class members to comply with its standard operating procedures and practices to utilize its deceptive and unfair forms and incomplete records in support of the litigation; and (iii) Transworld requires Patenaude and the Defendants' Class members to commence litigation beyond the applicable litigation by flooding the courts with thousands of cases including many that are barred by the statute of limitations and many which contain false, misleading and deceptive statements in the name of the NCSLT Trusts.

d. As part of the standard operating procedures and practices Transworld

requires Patenaude and the Defendants' Class members receive a high volume of collection accounts from Transworld and to keep track, attorneys law firms are "graded" with "attorney report cards" that "monitor[] the performance" of attorneys and to adjust the "market share" of accounts the law firms receive from TSI among other things. If the attorneys receive a "bad grade," Transworld may "off-board or file" the law firms. The Attorney Network also minimizes the contact between the law firms and Transworld, leaving most contact to a "performance manager" who reviews the "inventory" of any given law firm's business from Transworld on a weekly basis. The "performance managers" are not lawyers and focus on moving the collection cases along.  Attorneys are also given settlement parameters for any given account that are not individualized to a borrower's account or litigation file. There is also a "media team" of less ten non-attorney employees who assist the legal specialists with collecting documents for affidavits and discovery. Lastly, on information and belief, there are only two "legal account specialists" who perform the with a Bradley Luke as the director of operations with little to no attorney oversight at Transworld who do the bulk of litigation for the Attorney Network. They process affidavits, "handle" discovery responses, depositions and trial testimony. On average, they review between 20 to 40 affidavits per day assuming they are not doing other discovery tasks and collectively, handle all the litigation for the entire country. When they are handling "discovery," based on information and belief, the law firms in the

Class Action Complaint

Attorney Network have little to no involvement in the preparation or completion of discovery responses. In total, upon information and belief, the legal account specialists, performance managers, their supervisor and other support staff total between 70 and 100 Transworld employees to handle the NCSLT caseload with the Attorney Network for all fifty stays.

e. TSI also represents to courts that they are the document custodian for the business records of the NCSLT Trusts, however, the actual native files and servicing records are actually kept at the repository of a separate entity, American Educational Services ("AES") *aka* the Pennsylvania Higher Education Assistance Agency ("PHEAA"), who is the loan servicer for the NCSLT Trust prior to default and charge off.

3.     Plaintiff's belief for the allegations stated in the previous paragraph are based on: (i) Transworld's "Assurance of Discontinuance" entered into with the Attorney General of the State of New York, Bureau of Consumer Frauds & Protection (Assurance No. 20-061) dated September 11, 2020 (attached as Exhibit 1); (ii)  deposition transcripts and trial testimony of Bradley Luke, the Director of Operations at Transworld and regular Rule 30(b)(6) deponent who speaks on behalf of the Trusts and (iii) her own experiences with Patenaude in the Superior Court of California, County of San Bernardino where she sought to challenge these practices by Patenaude at the direction and control of Transworld but it instead dismissed the underlying actions mooting her proposed cross complaint (if Patenaude and Transworld had actually believed their practices were just and proper there was no reason to dismiss the collection actions against Plaintiff but instead within a short period of receiving notice of Plaintiffs' intent to pursue Patenaude's and Transworld's at

Class Action Complaint

issue they proceeded to quickly dismiss their collection action(s) *ex parte* with no notice to Plaintiff).

4.     Under California law which governs Transworld as a California corporation, "[n]o person shall practice law in California unless the person is an active licensee of the State Bar." Cal. Bus. & Prof. Code § 6125.  "Any person…otherwise practicing law who is not an active licensee of the State Bar" may be subject to a misdemeanor.   Cal. Bus. & Prof. Code § 6126.  Under California law the unlawful practice of law also constitutes "unfair competition" in violation of Cal. Bus. & Prof. Code § 17200.  *See also In re Reynoso*, 477 F.3d 1117, 1125 (9th Cir. 2007)("California courts have long accepted that, in a general sense, 'the practice of law ... includes legal advice and counsel and the preparation of legal instruments and contracts.' *Baron v. City of L.A.,* 2 Cal.3d 535, 86 Cal.Rptr. 673, 469 P.2d 353, 357 (1970) (noting that this definition was adopted as early as 1922)").

5.     By unfairly and deceptively aiding and collecting on behalf of Transworld, while it is practicing law without a license, Patenaude and the members of the Defendants' Class have unfairly and deceptively affected the consumer transactions of the Plaintiffs' Class members and utilized means of collection through the state courts which Patenaude and the Defendants' Class members had no right to pursue.

6.     As a direct and proximate result of Patenaude and the Defendants' Class members' attempts to collect consumer debts from them, Named Plaintiff and the Plaintiffs' Class members have been damaged and harmed by Patenaude and the Defendants' Class members' each: (i) permitting Transworld to borrow their law licenses and filling collection actions at the direction and control of Transworld; (ii) Patenaude and

Class Action Complaint

the Defendants' Class members' claiming, threatening, and seeking sums Transworld did not have a right to seek and were not owed; and (iii) using Transworld's court documents and forms in connection with a legal proceeding without any ability to review and correct inaccuracies presented to the courts. In addition, Named Plaintiff and the Plaintiffs' Class members are entitled to statutory damages for Patenaude and the Defendants' Class members' actions.

## II. PARTIES

7.      Plaintiff Aleksia Lindsay *f/k/a* Aleksia Hepner (referred to herein as "Lindsay" or "Named Plaintiff") was at all times relevant to this action, a natural person residing in Rancho Cucamonga, California.

8.      Defendant Patenaude & Felix, A.P.C. ("Patenaude") is a debt collection law firm incorporated in California and with offices in California located at 9619 Chesapeake drive, Suite 300, San Diego, CA  92123.  Patenaude seeks to collect defaulted consumer debts on behalf of Transworld and the NCSLT Trusts through litigation directed and controlled by Transworld and the mails. In addition

    a.  Patenaude is a debt collector as defined in the FDCPA.  It uses instrumentalities of interstate commerce or the mails in its business, the principal purpose of which is the collection of any debts, or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

    b.  Is managed by a Board of Directors.

    c.  To carry-out part of its consumer collections business, upon information and belief it also operates as part of Transworld's Attorney Network

Class Action Complaint

9.      Not named as parties to this action are 15 Delaware Statutory Trusts known as: National Collegiate Student Loan Trust I, National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, and National Collegiate Student Loan Trust 2007-4 (collectively "NCSLT Trusts").  Each of the NCSLT Trusts were formed for the alleged purpose of acquiring purported consumer debts.

10.     Not named as a party to this action Transworld Systems, Inc. ("Transworld" or "TSI") is a debt collector which acts on behalf of U.S. Bank for the NCSLT Trusts that collectively claim ownership of hundreds of thousands of purported private student loans, when in fact they are not qualified student loans, and is engaged in the business of a collection agency using the mail and telephone, the primary purpose of which is to collect consumer debts allegedly owed to others. Transworld also appears to be engaged in the unauthorized practice of law controlling and directing the writings and other actions of attorneys it hires including Patenaude and the members of the Defendants' Class. Transworld is a California corporation with its principal place of business in Pennsylvania. In addition:

a.  Transworld is a debt collector as defined in the FDCPA and has provided services in connection with collecting defaulted debt owed to the Trusts on the alleged consumer loan accounts of Defendant and putative class

Class Action Complaint

members at a time when the consumers were in default. Among the debts Transworld collects are purported "private student loans" allegedly owed to the Trusts.

b. Transworld is managed by a Board of Directors.

c. Transworld's duties as special subservicer to the NCSLT Trusts are set forth in an agreement with the NCSLT Trusts' special servicer. The terms of the agreement and multiple amendments provide that Transworld "shall administer, manage and oversee collection litigation," "shall be responsible for selecting and directly supervising collection attorneys," and "shall review all complaints and affidavits utilized by" attorneys retained by Transworld on behalf of the NCSLT Trusts, all "with the goal of maximizing the collection of amounts payable on" the loans owned by the Trusts. This is the unauthorized practice of law by a corporation, which is not permitted by California law which requires a license to practice law. Bus. & Prof. Code § 6125

d. On September 15, 2017, the CFPB issued a Consent Order in the matter of Transworld Systems, Inc. as agent for the Collective NCSLT Trusts, filing it as 2017-CFPB-0018. A copy of which is Exhibit B, hereto ("CFPB Consent Order").

e. That CFPB Consent Order was issued specifically as to Transworld's unfair and deceptive acts and practices on behalf of, or in the name of, the NCSLT Trusts. The CFPB Consent Order is both remedial and mandatory, and identified and prohibited many of the unfair and deceptive acts and practices

Class Action Complaint

of Transworld on behalf of, or in the name of, the NCSLT Trusts identified above.

f.  In the CFPB Consent Order, the CFPB found that Transworld and its nationwide network of law firms committed a number of offenses between November 1, 2014 and April 25, 2016, including:

   i.  Filing tens of thousands of collections lawsuits against borrowers in which they did not possess the complete documentation needed to prove the NCSLT Trusts owned the loans;

   ii. Filing tens of thousands of affidavits in support of collections lawsuits in which the affiant swore they had personal knowledge of the debt, when in fact the affiants frequently merely reviewed data on a computer screen, did not know the source of the data or how it was collected and maintained, and lacked knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the loans; and

   iii. Filing numerous lawsuits without the intent or ability to prove the claims, if contested.

g.  The CFPB Consent Order requires that any law firm Transworld retained in connection with the collection of the loan accounts allegedly owned by the Trusts agree and abide by the terms and conditions of the Consent Order. Consent Order at ¶ 45(b).

h.  The CFPB Consent Order also requires "its officers, agents, service providers, servants, employees and attorneys who have actual notice of

Class Action Complaint

the Consent Order, whether acting directly or indirectly, may not initiate a collection lawsuit to collect a debt unless respondent possesses…..documentation necessary to prove that the Trust owns the loan….. " among other necessary requirements. Consent Order at ¶ 45(f).

i.  The CFPB Consent Order also prohibits "its officers, agents, service providers, servants, employees and attorneys who have actual notice of the Consent Order….." from filing affidavits containing misrepresentations and false statements…." with specific detail as to prohibited conduct. Consent Order at ¶ 45(l).

j.  On September 11, 2020, the New York Attorney General issued an Assurance of Discontinuance concerning Transworld Systems, Inc. that addresses TSI's practices including the control and direction they assert over the Attorney Network and TSI made or caused to be made false, misleading and deceptive statements in formal documents filed in lawsuits filed in the name of the Trusts.  See Exhibit A.

k.  To carry-out part of its consumer collections business, it also operates and manages an Attorney Network business unit, which includes Patenaude & Felix, A.P.C. Defendants' Class members that files debt collection lawsuits in California and nationwide to collect on behalf of the NCSLT Trusts.

## III.  JURISDICTION AND VENUE

11.  This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 since certain of

the claims asserted herein arise under the laws of the United States.

12.    This Court has jurisdiction asserted because the Defendant transacts business, perform work, have interests in real property, and provides services in California.

13.    Venue is appropriate in this Court pursuant to 28 U.S.C.A. § 1391 because a substantial portion part of the events or omissions giving rise to the claims before the Court, related to the Named Plaintiff and Defendant, occurred in this District.   The violations of law hereinafter described have been committed in the State of California. The Defendant regularly conducts business and supply products to buyers throughout this state and specifically within the County of San Bernardino. Therefore, jurisdiction and venue are proper within this Court.

## IV. FACTS

**A.    ADDITIONAL NCSLT TRUSTS AND TRANSWORLD BACKGROUND**

14.    Asserting gross negligence and other actionable wrongful conduct, the NCSLT Trusts, by way of a Verified Amended Complaint filed in Delaware Chancery ("NCSLT Trust Chancery Court Action") Court its affiliates and managers and made, among others, the following allegations which, on information and belief, after investigation, Plaintiff asserts are accurate, and on information and belief reallege:

a.    ¶ 45:"Neither the Trusts nor the Owners approved these arrangements with Turnstile or with Transworld. To the contrary, the Owners specifically informed the Administrator and U.S. Bank that they did not want Turnstile or TSI to perform any services relating to the Trusts. But the Administrator and U.S. Bank refused to follow the instructions from the Owners. The

Class Action Complaint

Trust did not hire Turnstile or TSI, neither Turnstile nor TSI acts at the direction of the Trusts, and they do not follow any directions or instructions issued by the Trusts. To the contrary, as discussed below, while the Owners of the Trusts have requested that TSI cease filing lawsuits in the name of the Trusts where TSI cannot prove that the Trusts have standing to collect on defaulted loans, TSI as nevertheless continued to file such lawsuits"

b. ¶46 "To the contrary, TSI is an agent of U.S. Bank as Special Servicer. Under the Special Servicing Agreement, U.S. Bank was responsible for 'the enforcement, collection and servicing of Delinquent Loans and Defaulted Loans      "

c. ¶47 "U.S. Bank's duties further included monitoring the performance of Tunstile and replacing it if it was deficient or negligent in performing its duties. As set forth herein, Turnstile's performance of its duties was deficient and negligent, but U.S. Bank failed to monitor Turnstile's performance and failed to replace Turnstile as Subservicer.

15. The remainder of the allegations in the NCSLT Trust Chancery Court Action as they pertain to U.S. Bank in said Verified Amended Complaint establish that U.S. Bank was in a position and responsible to prevent and avoid the unfair and deceptive acts and practices performed by Transworld, the attorneys from Transworld's Attorney Network and ARS, that U.S. Bank knew of and was fully informed about said unfair and deceptive acts and practices being performed, that U.S. Bank had a duty to prevent and avoid such unfair and deceptive acts and practices, and that U.S. Bank negligently and/or grossly negligently and/or

Page 13 of 33

Class Action Complaint

intentionally, failed to prevent such unfair and deceptive acts and practices, and in fact aided and abetted the commission of such unfair and deceptive acts and practices by Transworld, Transworld's Attorney Network and ARS on behalf of the NCSLT Trusts.

**B.     FACTS COMMON TO THE NAMED PLAINTIFF**

16. In January, 2007, Lindsay, with her mother as a co-signor, entered a credit agreement with Bank of America to borrow $30,000 to cover purportedly education expenses associated with the California Culinary Academy. The APR was 12.207% variable rate based upon LIBOR which is adjusted monthly. The now defunct California Culinary Academy represented to Lindsay and others that it was a legitimate school and she would have many job options with generous salaries upon graduation. She was also told by the authorized representatives at the defunct school that her earned school credits would easily transfer if she ever wanted to transfer schools.

17. In May, 2007, Lindsay with her mother as a co-signor, entered a second credit agreement with Bank of America to borrow another $30,000 to cover education expenses associated with the California Culinary Academy. This loan was at 12.334% APR variable rate based upon LIBOR which is adjusted monthly.

18. Soon thereafter, in 2007, a class action lawsuit (*Amador v. California Culinary Academy*) was filed. One allegation was that the school inflated job placement rates by counting as successful post-culinary school placements jobs that would have been available without going to culinary school at all. The complaint in its various iterations, with detailed allegations, is available from the San Francisco Superior

Court, Case No. CGC-07-467710. The case settled in 2012 and the school was permanently closed in 2017.

19. Defendant's co-signor, her mother, tried to make some payments on the loans, but ultimately fell behind and the loans went into default. Subsequent to the default, the servicing and collection of the purported loans was transferred to Transworld who attempted to collect the loans.

20. Even though the defaults on the loans had occurred previously, the last payment on the loans was made on October 6, 2016.

21. On February 1, 2019, a collection agency on behalf of the NCSLT Trusts who claimed to have acquired the Plaintiff's loans (i.e., NCSLT Trust 2007-1 and NCSLT Trust 2007-2) sent Plaintiff two letters demanding payment.

22. Lindsay asked for validation of the outstanding debt and on October 14, 2019. Transworld responded asking Lindsay to contact Patenaude and providing a copy of the credit agreements and Loan History Payment Reports that appear incomplete and inaccurate. The documentation did not include any billing statements or any payment history prior to the alleged default. Transworld provided three separate charts with various interest rates – 7.66%, 6.99%, and 6.75%.

23. Transworld also engaged Patenaude to commence two collection actions against Plaintiff in the Superior Court of California, County of San Bernardino. This was as part of Transworld's Attorney Network. Plaintiff was only made aware of the actions less than a year before the commencement of this action.

24. In Case No. CIVDS1931160, Transworld engaged and directed Patenaude to file and later serve upon Lindsey an action pending in the Superior Court of California,

Class Action Complaint

County of San Bernardino on its behalf and on behalf of NCSLT Trust 2007-1 Trust filed a lawsuit in San Bernardino Court against Lindsay. Patenaude completed service upon Lindsey less than a year before the commencement of this action on December 9, 2019.

25. In Case No. CIVDS1931182, Transworld engaged and directed Patenaude to file an action later serve upon Lindsey an action pending in Superior Court of California, County of San Bernardino on its behalf and on behalf of NCSLT Trust 2007-2 Trust filed a lawsuit in San Bernardino Court against Lindsay. Patenaude completed service upon Lindsey less than a year before the commencement of this action on December 9, 2019.

26. In each of the form complaints and papers served upon Lindsey less than a year before the commencement of this action, Patenaude represented and communicated to Lindsey that it and its attorneys were counsel for NCSLT Trust 2007-1 and NCSLT Trust 2007-2 Trust. However, Patenaude concealed from Lindsey in these communications and actions that in fact Transworld was also practicing law in each of the actions. Specifically, based upon its custom, routine, and contractual relationship with Patenaude,

    a. Transworld retained the "absolute right" to exclusively control certain aspects of the debt collection litigation;

    b. Transworld prohibited Patenaude from reviewing and editing any papers prepared by it in purported support of the debt collection litigation;

    c. Transworld required Patenaude to comply with its standard operating procedures and practices to utilize its deceptive and unfair forms and

Class Action Complaint

incomplete records in support of the litigation; and

d.  Transworld required Patenaude to commence litigation beyond the applicable litigation in hopes that by flooding the courts with these actions along with thousands of other cases that were barred by the statute of limitations and many which contain false, misleading and deceptive statements in the name of the NCSLT Trusts, its practices would not be discovered.

27. The unfair and unconscionable practices related to the utilization of erroneous Transworld representations by Patenaude is demonstrated by the following:

a.  In Case No. CIV DS1931160, Patenaude at Transworld's direction and control represented that Lindsay owed a principal sum of $45,596.60 while at the same time claiming that the basis for the debt was a document which would have a limited principal of $30,000.00, if it had even been completed.

b.  In Case No. CIV DS19311882, Patenaude at Transworld's direction and control represented that Lindsay owed a principal sum of $48,640.86 while at the same time claiming that the basis for the debt was a document which would have a limited principal of $30,000.00, if it had even been completed.

28. Patenaude agreed and stipulated that the two actions it filed by it on behalf of Transworld in the names of NCSLT Trust 2007-1 and NCSLT Trust 2007-2 Trust against Lindsey were related and should be consolidated on November 9, 2020. Yet, it did concealed that its agreement and stipulation continued to conceal from Lindsey in these communications and actions that in fact Transworld was also practicing law in each of the actions and controlling Patenaude's litigation choices

Class Action Complaint

as discussed *supra*.

29. Lindsey became aware of the public records discussed *supra* about Transworld's unlicensed practice of law when the Transworld's "Assurance of Discontinuance" with the Attorney General of the State of New York, Bureau of Consumer Frauds & Protection (Assurance No. 20-061) dated September 11, 2020 became publically known.

30. Lindsey sought leave of the Superior Court of California, County of San Bernardino to assert claims related in part to Transworld's unauthorized practice of law.  On behalf of Transworld, Patenaude received notice of these proposed claims on November 10, 2020.

31. In response to receiving Lindsey's proposed cross-complaint which challenges in part Transworld's unauthorized practice of the law by its exclusive control of Patenaude's debt collection litigation activities as described *supra*, Transworld directed Patenaude to dismiss the collection actions on an *ex parte* basis before the Superior Court of California, County of San Bernardino could even consider if it would adjudicate the claims—thereby mooting consideration of Lindsey's proposed cross-complaint.

32. Throughout the one year before the commencement of this action, Patenaude maintained the right to collect from Lindsey at the direction and control of Transworld even though it knew Transworld was not an attorney, its records were prone to material errors, and it had no control over the claims asserted and whether they were bona fide and maintained in good faith.  By its agreement with Transworld, Patenaude looked the other way and unfairly and unconscionably

allowed Transworld's unauthorized practice of the law to be maintained through it.  Only when its relationship with Transworld was exposed and Lindsey sought to challenge the unfair and unconscionable practice, did Patenaude at the direction and control of Transworld dismiss the actions.

33.     Patenaude and its owners and staff attorneys have known about the irregular, unfair, and unconscionable practices of Transworld but have maintained the right to collect on Transworld's behalf through the unfair and unconscionable methods of collection in which Transworld is practicing law without a license to do so.

34.     As a result of Patenaude's concealment of the true facts from Lindsey (and the courts), Lindsey did not know that Patenaude's method of collection supporting Transworld's unauthorized practice of law was occurring was not proper and legal.  Had Patenaude disclosed these facts and not elected to conceal them from Lindsey, she could have acted upon her rights to stop Patenaude's illegal activity sooner, and not incurred legal expense to defend the improper actions commenced by Patenaude on behalf of Transworld as well as the frustration, fear, anxiety, upset stomachs, and sleepless worry that she be subject to a judgment for bogus sums claimed due by Patenaude.

## C.   CLASS ALLEGATIONS

### The Plaintiffs' Class Allegations

35.     This action is properly brought as a Plaintiffs' Class under Fed. R. Civ. P. 23.  Named Plaintiff proposes that the Plaintiffs' Class be defined as follows:

> Those persons whom Patenaude and the other members of the Defendants' Class were engaged by Transworld to communicate with directly or indirectly for the purpose of attempting to collect upon a consumer debt on behalf of a NCSLT Trust through debt collection litigation in year prior to the commencement of this action.

Class Action Complaint

36.     Lindsey qualifies as a member of the Plaintiffs' Class and proposes to be appointed by the Court as the Named Plaintiff for the Plaintiffs' Class.

37.     Excluded from each of the Plaintiffs' Class are any person who falls within the definition if the person is (i) an employee or independent contractor of Patenaude or any member of the Defendants' Class or Transworld; (ii) a relative of an employee or independent contractor of Patenaude or any member of the Defendants' Class or Transworld; or (iii) an employee of the Court where this action is pending.

38.     The Plaintiffs' Class definition in ¶ 35 as limited by ¶ 37 may be amended or modified.

39.     The particular members of the Plaintiff's Class are capable of being described without difficult managerial or administrative problems.  The members of the Plaintiff's Class are also readily identifiable from the information and public records and the business records of Patenaude and each of the members of the Defendants' Class.  Upon information and belief, the size of the Class exceeds one hundred persons.

40.     The Plaintiffs' Class members are sufficiently numerous that individual joinder of all members is impractical.  This allegation is based in part on the fact that Patenaude and each of the members of the Defendants' Class participation in collection actions related to consumer claims exceeds 2,000 cases based upon information and belief, throughout the United States related to the Named Plaintiff and Plaintiffs' Class members.  Further, upon information and belief based upon public records, Patenaude and each of the members of the Defendants' Class has attempted and/or actually utilized the collection tools of the state courts to attempt collect from Plaintiffs' Class members including

Class Action Complaint

knowingly utilizing the inaccurate records of the NCSLT Trusts at the direction of Transworld.

41.     There are questions of law and fact common to the Plaintiffs' Class which predominate over any questions affecting only individual members of the Plaintiffs' Class and, in fact, the wrongs alleged against Patenaude and the Defendants' Class members by the Plaintiffs' Class members and the remedies sought by Named Plaintiff and the Plaintiffs' Class against Patenaude and the Defendants' Class members are identical, the only difference being the exact sum which each Plaintiffs' Class member is entitled to receive.  The common issues include, but are certainly not limited to:

a.  Whether Patenaude and members of the Defendants' Class may attempt to collect upon the Plaintiff and members of the Plaintiffs' Class at the direction and control of Transworld while it practicing law without a license;

b.  Whether Patenaude and members of the Defendants' Class may lawfully attempt collect through litigation directed and controlled by Transworld while it is practicing law without a license;

c.  Whether Patenaude and members of the Defendants' Class may lawfully attempt collect through litigation directed and controlled by Transworld knowingly using inaccurate records of the NCSLT Trusts at the direction of Transworld;

d.  Whether Patenaude and members of the Defendants' Class members' concealment of the true facts, that Transworld was acting as an unauthorized law firm directing and controlling the debt collection litigation against the Plaintiffs' Class was unfair or unconscionable;

Class Action Complaint

e. Whether Patenaude and members of the Defendants' Class members' knowingly communicated false or misleading information to other persons while maintaining and/or commencing collection litigation commencement by at the direction of Transworld to the Plaintiffs' Class by concealing Transworld's improper conduct;

f. Whether Patenaude and members of the Defendants' Class members' are permitted to continue collecting or attempting to collect on behalf of Transworld while it is practicing law without a license in relation to the Plaintiffs' Class members; and

g. Whether the Patenaude and members of the Defendants' Class members should be liable to the Plaintiffs' Class members for damages for their claims asserted.

42. Named Plaintiff's legal and equitable claims are typical of and identical to each member of the Plaintiffs' Class and will be based on the same legal and factual theories.

43. Patenaude's and the members of the Defendants' Class members' defenses (which defenses are denied) would be typical of and identical for each member of the Plaintiffs' Class and will be based on the same legal and factual theories since they arise out of Transworld's standard and uniform contracts with Patenaude's and the members of the Defendants' Class members.

44. The Named Plaintiff will also fairly and adequately represent and protect the interests of the Plaintiffs' Class.  Named Plaintiff has retained counsel experienced in consumer class actions, including actions involving unlawful debt collection practices.

Class Action Complaint

Named Plaintiff does not have any interests which might cause him not to vigorously prosecute this action or that are otherwise adverse to the interests of the members of the Plaintiffs' Class.

45.     Certification of a Class under Rule Fed. R. Civ. P 23(b)(2) and (b)(3) is appropriate as to the Plaintiffs' Class members in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of Plaintiffs' Class members' claims, and economies of time, effort and expenses will be fostered and uniformity of decisions will be ensured.

46.     Named Plaintiff's claims are typical of the claims of the Plaintiffs' Class members.

47.     Named Plaintiff will fairly and adequately protect the interests of all class members in the prosecution of this action. She is similarly situated with, and has suffered injuries similar to the members of the Plaintiffs' Class she seeks to represent. Named Plaintiff has been wronged, wishes to obtain redress of the wrong, and wants Patenaude and the members of the Defendants' Class stopped from enriching themselves and others via illegal activities or otherwise perpetrating similar wrongs on others based upon the unlawful conduct of Transworld which controls the acts of all members of the Defendants' Class while practicing law without a license and requires  Patenaude and members of the Defendants' Class to knowingly use inaccurate records of the NCSLT Trusts.

48.     Patenaude's and the members of the Defendants' Class failure to disclose the true status and control of Transworld related to the debt collection litigation commenced and maintained by them against the Named Plaintiff and Plaintiffs' Class members has

also equitably tolled the running of any limitations that may otherwise apply to the claims of the Named Plaintiff and the members of the Plaintiffs' Class. Patenaude and the members of the Defendants' Class may not benefit from their failure to properly and fully disclose the true facts known to them concerning Transworld's illegal conduct.

49.     The Named Plaintiff and members of the Plaintiffs' Class were not required to assume that Patenaude and the members of the Defendants' Class were engaged in illegal activities in court proceedings. The Named Plaintiff and members of the Plaintiffs' Class were reasonable in not assuming that Patenaude and the members of the Defendants' Class were aiding Transworld's illegal activities.

50.     Due to its presumed and actual knowledge, as described *supra*, Patenaude and the members of the Defendants' Class had an appreciation that they were not entitled to receive the benefits they were attempting to collect or actually collecting from the Named Plaintiff and members of the Plaintiffs' Class based upon Transworld's improper conduct of practicing law without a license and utilizing incomplete and knowingly inaccurate records of the NCSLT Trusts at the direction of Transworld.

51.     The Class members have suffered damages, losses, and harm similar those sustained by the Named Plaintiff as described *supra*.

        The Defendants' Class Allegations

52.      This action is also properly brought as a Defendants' Class under Fed. R. Civ. P. 23.  Named Plaintiff proposes that the Defendants' Class be defined as follows:

> Those persons retained by Transworld to commence and maintain litigation to attempt to collect a consumer debt from the members of the Plaintiffs' Class in the year preceding the commencement of this action.

Class Action Complaint

53.     Patenaude qualifies as a member of the Defendants' Class and Named Proposes that Patenaude be appointed by the Court as the Named Defendant for the Defendants' Class.

54.     Excluded from each of the Defendants' Class are any person who falls within the definition if the person is (i) a member of the Plaintiffs' Class; or (ii) an employee of the Court where this action is pending.

55.     The Defendants' Class definition in ¶ 52 as limited by ¶ 54 may be amended or modified.

56.     The particular members of the Defendants' Class are capable of being described without difficult managerial or administrative problems.  The members of the Defendants' Class are also readily identifiable from the information and public records and the business records of Patenaude and each of the members of the Defendants' Class.  Upon information and belief, the size of the Class exceeds fifty persons.

57.     The Defendants' Class members are sufficiently numerous that individual joinder of all members is impractical.  This allegation is based in part on the fact that Lindsey and each of the members of the Plaintiffs' Class have been subjected to collection actions related to consumer claims exceeds 1,000 cases based upon information and belief, throughout the United States.  Further, upon information and belief based upon public records, Patenaude and each of the members of the Defendants' Class has attempted and/or actually utilized the collection tools of the state courts to attempt collect from Plaintiffs' Class members including knowingly utilizing the inaccurate records of the NCSLT Trusts at the direction of Transworld.

58.     There are questions of law and fact common to the Defendants' Class which

Class Action Complaint

predominate over any questions affecting only individual members of the Defendants' Class and, in fact, the wrongs alleged against Patenaude and the Defendants' Class members by the Plaintiffs' Class members and the remedies sought by Named Plaintiff and the Plaintiffs' Class against Patenaude and the Defendants' Class members are identical, the only difference being the exact sum which each Defendants' Class member will have to pay to the Plaintiffs' Class.  The common issues include, but are certainly not limited to:

    a.  Whether Patenaude and members of the Defendants' Class are permitted to loan their law licenses to Transworld which was practicing law without a license;

    b.  Whether Patenaude and members of the Defendants' Class may maintain a bona fide error defense related to the knowingly inaccurate records utilized by them of the NCSLT Trusts;

    c.  Whether Patenaude and members of the Defendants' Class may enrich themselves by participating in Transworld's unfair and unconscionable debt collection activities;

    d.  Whether Patenaude and members of the Defendants' Class members' are permitted to continue collecting or attempting to collect on behalf of Transworld while it is practicing law without a license in relation to the Plaintiffs' Class members; and

    e.  Whether the Patenaude and members of the Defendants' Class members should be liable to the Plaintiffs' Class members for damages for their claims asserted.

Class Action Complaint

59.     Named Defendant's legal and equitable defenses (which are denied) are typical of and identical to each member of the Defendants' Class and will be based on the same legal and factual theories.

60.     Patenaude's and the members of the Defendants' Class members' defenses (which defenses are denied) would be typical of and identical to the claims of each member of the Plaintiffs' Class and will be based on the same legal and factual theories since they arise out of Transworld's standard and uniform contracts with Patenaude's and the members of the Defendants' Class members.

61.     The Named Defendant will also fairly and adequately represent and protect the interests of the Defendants' Class.   Named Defendant has represented itself in numerous other actions and has retained counsel experienced in consumer class actions, including actions involving unlawful debt collection practices related to Transworld and the NCSLT Trusts.   Named Defendant does not have any interests which might cause it not to vigorously defend this action or that are otherwise adverse to the interests of the members of the Defendants' Class.

62.     Certification of a Class under Rule Fed. R. Civ. P 23(b)(2) and (b)(3) is appropriate as to the Defendants' Class members in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.   A class action will cause an orderly and expeditious administration of Defendants' Class members' defenses, and economies of time, effort and expenses will be fostered and uniformity of decisions will be ensured.

63.     Defendants' Class members defenses are typical of the claims of the Defendants' Class members.

Class Action Complaint

64.     Named Defendant will fairly and adequately protect the interests of all Defendants' Class members in the defense of this action. It is similarly situated with, and has that same interests as each of the members of the Defendants' Class it represents.

### COUNT I
### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
### BY THE PLAINTIFFS' CLASS AGAINST THE DEFENDANTS' CLASS

65.     Lindsey adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth. This claim is brought on behalf of Lindsey individually and as the Named Plaintiff of the Plaintiff's Class against Patenaude on its individual behalf and as the Named Defendant for the Defendants' Class members.

66.     Named Plaintiff and the Plaintiffs' Class members seek a declaration that: (a) Patenaude and the Defendants' Class members are not entitled, directly or indirectly, as a matter of law to collect against any member of the Plaintiffs' Class based any engagement with Transworld while it is practicing law without a license under California law; and (b) Patenaude and the Defendants' Class members may not, directly or indirectly threaten or actually utilize the assistance of any court to collect or attempt to collect upon the Plaintiff or the Plaintiffs' Class members while utilizing NCSLT's inaccurate and incomplete records.

67.     Patenaude and the Defendants' Class members should be enjoined from attempting to collect any sums from Named Plaintiff and Plaintiffs' Class members, directly or indirectly, based upon their engagement agreements with Transworld or the incomplete and inaccurate records of the NCSLT Trusts.

Class Action Complaint

WHEREFORE, Named Plaintiff and the Plaintiffs' Class members pray that this Court enter judgment in their favor and against the Patenaude and the Defendants' Class members and:

A. Certify this case as a class action with the Named Plaintiff as the Class Representative of the Plaintiffs' Class and her attorneys as counsel on behalf of the Plaintiffs' Class described herein;

B. Certify this case as a class action with the Named Defendant as the Class Representative of the Defendants' Class and its attorneys as counsel on behalf of the Defendants' Class described herein;

C. Order appropriate injunctive relief against Patenaude and the Defendants' Class members individually to prevent further violations of law or provide benefits to any person engaged by Transworld while it is practicing law without a license and knowingly utilizing the inaccurate records of the NCSLT Trusts, including a preliminary and permanent injunction;

D. Order and declare that as a matter of law, Patenaude and the Defendants' Class members are not entitled, directly or indirectly, as a matter of law to collect against any member of the Plaintiffs' Class based any engagement with Transworld while it is practicing law without a license under California law;

E. Order and declare that Patenaude and the Defendants' Class members may not, directly or indirectly threaten or actually utilize the assistance of any court to collect or attempt to collect upon the Plaintiff or the Plaintiffs' Class members while utilizing NCSLT's inaccurate and incomplete records;

Class Action Complaint

F.   Award reasonable attorneys' fees, litigation expenses and costs;

G.   Order other appropriate declaratory relief; and

H.   Provide such other or further relief as the Court deems appropriate.

## COUNT II
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, *et seq.*
### BY THE PLAINTIFFS' CLASS AGAINST THE DEFENDANTS' CLASS

68.   Lindsey adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth. This claim is brought on behalf of Lindsey individually and as the Named Plaintiff of the Plaintiff's Class against Patenaude on its individual behalf and as the Named Defendant for the Defendants' Class.

69.   Defendant Patenaude and each member of the Defendants' Class acquired their interest to collect for another in the Named Plaintiff's and Plaintiffs' Class members' alleged consumer loans assigned to them by Transworld during a period in which they allege (directly and indirectly) the debts were owed and unpaid and therefore Patenaude and each member of the Defendants' Class is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

70.   By communicating with the Named Plaintiff and Plaintiffs' Class members directly and indirectly and threatening and/or actually pursuing and maintain litigation and demanding and collecting sums not legally due from the Named Plaintiff and Plaintiffs' Class members based upon the knowingly inaccurate records of the NCSLT Trusts, Patenaude and each member of the Defendants' Class used false, deceptive, or misleading representations or means in connection with the collection of the consumer debts of the

Class Action Complaint

Named Plaintiff and Plaintiffs' Class members in violation of 15 U.S.C. § 1692e.

71.     By filing documents in the government court proceedings and thereafter serving those documents on the Plaintiffs' Class members claiming they had a right to collect payments from the Named Plaintiff and Plaintiffs' Class members based upon the inaccurract NCSLT Trust records, Patenaude and each member of the Defendants' Class has used a communication in collecting or attempting to collect a debt which improperly implies that the government or a government agency has authorized the collection effort when the government has not done so, in violation of 15 U.S.C. § 1692e(9).

72.     Patenaude and each member of the Defendants' Class members' acts and omissions concerning their relationship with Transworld while it was practicing law without a license in relation to the litigation commenced and maintained against the Named Plaintiff and Plaintiffs' Class members constitutes unfair or unconscionable means to collect or attempt to collect from the Named Plaintiff and Plaintiffs' Class members in violation of 15 U.S.C. § 1692f.

73.     Named Plaintiff and the Plaintiffs' Class members have suffered actual economic and non-economic damages, as more fully described *supra* and have incurred attorney's fees and court costs as a result of illegal debt collection practices of the Named Defendants and members of the Defendants' Class and direct and indirect actions described herein.

74.     The FDCPA provides the Named Plaintiff and the Plaintiffs' Class members are also entitled to an award of statutory damages in addition to actual damages.

WHEREFORE, Named Plaintiff and the Plaintiffs' Class members pray that this Court enter judgment in their favor and against the Patenaude and the Defendants' Class

Class Action Complaint

members on their FDCPA claims and:

A. Certify this case as a class action with the Named Plaintiff as the Class Representative of the Plaintiffs' Class and her attorneys as counsel on behalf of the Plaintiffs' Class described herein and as necessary and appropriate establish subclasses of the Plaintiffs' Class in relation to each member of the Defendants' Class;

B. Certify this case as a class action with the Named Defendant as the Class Representative of the Defendants' Class and its attorneys as counsel on behalf of the Defendants' Class described herein;

C. Award actual damages equal to each member of the Plaintiffs' Class from the Defendants' Class members;

D. Award statutory damages in the amount allowed by the FDCPA equal to $500,000.00 per member of the Defendants' Class to the Plaintiffs' Class members;

E. Award reasonable attorney's fees, litigation expenses and costs; and

F. Provide such other or further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury as to all issues subject to trial by jury.

/s/ Scott C. Borison
Scott C. Borison (CA Bar No. 289456)
1900 S. Norfolk St. Suite 350
San Mateo CA 94403
(301) 620-1016
Scott@borisonfirm.com

Class Action Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Monica Hartsock
Monica Hartsock, SBN 270114
LAW OFFICE OF MONICA HARTSOCK
4562 Hastings Ct.
Chino, California 91710
Telephone: (909) 536-1773
Monica@Hartsocklawfirm.com

*Attorneys for Plaintiffs and the Proposed Class*

Class Action Complaint