James K. Schultz, Esq. (SBN 309945)
Brittany L. Shaw, Esq. (SBN 331773)
Debbie P. Kirkpatrick, Esq. (SBN 207112)
SESSIONS, ISRAEL & SHARTLE, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:    619/758-1891
Fax:   877/334-0661
jschultz@sessions.legal
bshaw@sessions.legal
dkirkpatrick@sessions.legal

Attorneys for Defendant Patenaude & Felix, APC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSIA LINDSEY,<br><br>                    Plaintiff,<br><br>       vs.<br><br>PATENAUDE & FELIX, A.P.C.,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  5:20-CV-2537-JWH-SP<br><br>**MEMORANDUM IN SUPPORT OF PATENAUDE & FELIX, A.P.C.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:  April 9, 2021<br>Time: 9:00 a.m.<br>Courtroom: 2<br>Via Zoom Webinar<br>Judge John W. Holcomb |

NOW COMES Patenaude & Felix, A.P.C. ("Patenaude"), through undersigned counsel, and submits this memorandum in support of its motion to dismiss plaintiff's complaint.

# TABLE OF CONTENTS

I.   Introduction……………………………………………………………………1

II.   Background……………………………………………………………………3

III.  Standard of Review……………………………………………………………6

IV.  Plaintiff Fails to State a Plausible Claim that Patenaude Violated the
FDCPA…………………………………………………………………………8

     A. Plaintiff's Claims are Time Barred………………………………………..8

     B. Transworld is Not Engaged in the Practice of Law…………………12

     C. There is No Private Cause of Action for the Unauthorized Practice of
Law …………………………………………………………………………..15

     D. Plaintiff's Claims are Barred by the *Noerr-Pennington* Doctrine and
the "Litigation Privilege" of California Civil Code Section 47……..16

     E. There can be No Liability for the Simple Filing of a Lawsuit and
Invocation of NCSLT 2007-1 and NCSLT 2007-2's Rights ……….18

     F. Plaintiff Has Agreed to Withdraw the Claim under § 1692e(9) ……..22

     G. Any Putative Violation Was Not Material Because Plaintiff Does Not
Dispute Executing the Applicable Loan Documents or that She Owes
the Accounts……………………………………………………………………22

V.   Plaintiff's "Defendants' Class" Should be Stricken………………………...24

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Allen v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*,
No. CV093765PSGFFMX, 2010 WL 11515466
(C.D. Cal. Jan. 20, 2010)…………………………………...…………………15

*Altizer v. Highsmith*, 52 Cal. App. 5th 331, 265 Cal. Rptr. 3d 832 (2020)……….13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………..6-7

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988)…………………6

*Baron v. City of Los Angeles*,
2 Cal.3d 535, 86 Cal. Rptr. 673, 469 P.2d 353 (1970)……………………..13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)………………………………...6-7

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011)……10

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000)………16

*Deere v. Javitch, Block & Rathbone LLP*,
413 F. Supp. 2d 886 (S.D. Ohio 2006)…………………………………18-19

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010)……………8, 22-23

*Dorner v. Commercial Trade Bureau of Cal.*,
No. CIVF080083AWISMS, 2008 WL 1704137
(E.D. Cal. Apr. 10, 2008)………………………………………………..22

*Empress LLC v. City & County of S.F.*, 419 F.3d 1052 (9th Cir. 2005)…………..17

*Faircloth v. AR Res., Inc.*,
No. 19-CV-05830-JCS, 2020 WL 820307 (N.D. Cal. Feb. 19, 2020)……..10

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007)………………..8

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006)………………18

*Johnson v. BAC Home Loans Servicing, LP*,
    867 F. Supp. 2d 766 (E.D.N.C. 2011)………………………..…………18

*Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557 (7th Cir. 2011)…………………..24

*Kendricks v. Collect Access, LLC*,
    No. 519CV01134ODWSHKX, 2021 WL 256802
    (C.D. Cal. Jan. 26, 2021)……………………………………………..…6

*Kumar v. Select Portfolio Servicing, Inc.*,
    No. SACV191121JVSADSX, 2019 WL 8217548
    (C.D. Cal. Nov. 8, 2019)…………………………………………………4

*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001)…………………………………4

*Linder v. Eason*,
    No. SACV171294DOCJDEX, 2018 WL 3816763
    (C.D. Cal. June 29, 2018)……………………………………………..17

*Mansfield v. Midland Funding, LLC*,
    No. 09CV358 L WVG, 2011 WL 1212939 (S.D. Cal. Mar. 30, 2011)……19

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)……………………………………4

*McRobie v. Credit Prot. Ass'n*,
    No. 5:18-CV-00566, 2018 WL 5608121 (E.D. Pa. Oct. 30, 2018)………….1

*Naas v. Stolman*, 130 F.3d 892 (9th Cir. 1997)……………………………………8

*Newport Components, Inc. v. NEC Home Elecs. (U.S.A.), Inc.*,
    671 F. Supp. 1525 (C.D. Cal. 1987)…………………………………..16

*Ngoc Jenny Tran v. Velocity Investments, LLC*,
    No. EDCV182257FMOSHKX, 2020 WL 7264840
    (C.D. Cal. Oct. 23, 2020)……………………………………………..20-22

iii

*Nickoloff v. Wolpoff & Abramson, L.L.P.*,
    511 F. Supp. 2d 1043 (C.D. Cal. 2007)…………………………………….19

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005)…………………………………….10

*Perry v. Robertson*, 201 Cal. App. 3d 333, 247 Cal. Rptr. 74 (Ct. App. 1988)…..19

*Richardson v. Midland Funding, LLC*,
    No. CIV. CCB–13–1356, 2013 WL 6719110 (D. Md. Dec. 18, 2013)
    *aff'd*, 583 Fed. Appx. 124 (4th Cir. 2014)…………………………………18

*Rotkiske v. Klemm*, 140 S. Ct. 355 (2019)……………………………………….9

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009)………………….24

*Sepehry-Fard v. Dep't Stores Nat'l Bank*,
    No. 13-CV-03131-WHO, 2013 WL 5537126 (N.D. Cal. Oct. 4, 2013),
    *aff'd in part*, 670 Fed. Appx. 573 (9th Cir. 2016)…………………………19

*Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)………………………………………….1

*Silberg v. Anderson*, 50 Cal.3d 205, 266 Cal. Rptr. 638, 786 P.2d 365 (1990)…..17

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)…………………7

*Sullivan v. Credit Control Servs., Inc.*, 745 F. Supp. 2d 2 (D. Mass. 2010)…...1, 22

*Truong v. Mountain Peaks Fin. Servs., Inc.*,
    No. 3:12-CV-01681-WQH, 2013 WL 485763 (S.D. Cal. Feb. 5, 2013)…..16

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)……………………………..4

**<u>Statutes</u>**

15 U.S.C. § 1692e(9)………………………………………………………...1, 22

Business and Professions Code § 6125.……………………………………13-15

California Business and Professions Code § 17200…………………………...15-16

California Civil Code § 47(b)……………………………………………………..16

**Rules**

Fed. R. Civ. P. 12(f)……………………………………………… ……24

Fed. R. Civ. P. 23(c)…………..……………………………….……………………25

**Other Authorities**

S. Rep. No. 95–382, p. 8 (1977)………………………………………………1

v

# I.        <u>INTRODUCTION</u>

When distilled down, the gravamen of plaintiff's complaint is that Patenaude violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., ("FDCPA"), by filing two state court collection lawsuits related to two student loan accounts because it was allegedly aiding the creditor's loan servicer Transworld Systems Inc. ("Transworld") in the unauthorized practice of law.[1]

Plaintiff's claims fail on their face for numerous reasons, including that: (a) the claims are time barred; (b) there is no independent private right of action for the unauthorized practice of law; (c) neither Transworld nor Patenaude are engaging in the unauthorized practice of law under California law; (d) the claims are barred by the *Noerr-Pennington* doctrine and the "litigation privilege" of California Civil

---

[1] Indeed, despite 32 pages of spurious, conclusory, and irrelevant allegations, the only section of the FDCPA relied upon by plaintiff is 15 U.S.C. § 1692e(9), which provides liability for: "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." Plaintiff uses this section in an attempt to shoehorn an unauthorized practice of law allegation into an FDCPA claim. This attempt fails because, as discussed in greater detail *infra*, "the Supreme Court has recognized that Congress passed § 1692e(9) to prevent debt collectors from "misrepresenting" that they are government officials." *McRobie v. Credit Prot. Ass'n*, No. 5:18-CV-00566, 2018 WL 5608121, at *3 (E.D. Pa. Oct. 30, 2018) (citing *Sheriff v. Gillie*, 136 S. Ct. 1594, 1601 (2016) (citing S. Rep. No. 95–382, p. 8 (1977))). "[M]ost courts that have applied § 1692e(9) have limited its reach to egregious situations where a debt collector overtly impersonates a government agency or where it attempts to hide its identity by using a false alias." *Id.* (quoting *Sullivan v. Credit Control Servs., Inc.*, 745 F. Supp. 2d 2, 10 (D. Mass. 2010)). Even assuming the accuracy of the hyperbole in the complaint, a simple review of plaintiff's limited well-pled factual allegations confirms neither situation applies here.

Code § 47; (e) the state court complaints are simply an invocation of the creditor's rights and there can be no liability based upon the filings alone; and (f) the violations of which plaintiff complains are not material where she does not dispute originating the two loans at issue nor was she precluded or prevented from meaningfully responding to the state court complaints.

If plaintiff's claims were accepted by this Court, it would sanction a party to essentially dictate and interfere with the attorney-client rights of their *opposing parties and attorneys*.  Additionally, it would be a perversion of the purposes of Business and Professions Code § 6125, which seeks to protect the public by ensuring that those who practice law do so competently.  Imposing FDCPA liability upon a law firm that files collection lawsuits in coordination with a loan servicer on behalf of a creditor does not advance that objective.  Moreover, plaintiff has not alleged, nor can she, that Patenaude did not draft, review and file two straightforward collection lawsuits against her under the penalty of perjury.

Furthermore, and in the alternative to the extent this Court concludes that plaintiff has stated a plausible claim, the allegations related to the "Defendants' Class" should be stricken given that certifying such a class would require an independent inquiry into each separate state's rules for what constitutes the practice of law, whether there is a private right of action, and whether such action can be bootstrapped into an alleged violation of the FDCPA.

## II.    <u>BACKGROUND</u>

In January 2007, Aleksia M. Hepner n/k/a Aleksia Lindsay ("plaintiff"), with her mother as a co-signor, entered into a credit agreement with Bank of America, N.A. to borrow $30,000 to cover educational expenses associated with her attendance at the California Culinary Academy.  *See* plaintiff's complaint, Dkt. 1, ¶ 16.

In May 2007, plaintiff, again with her mother as a co-signor, entered into a credit agreement with Bank of America, N.A. to borrow an additional $30,000 to cover education expenses associated with her attendance at the California Culinary Academy.  *See id.* at ¶ 17.  Plaintiff does not dispute that she entered into these two loans.  *Id.*  Plaintiff admits that payments were made on the loans, that she and her mother defaulted on the loans, and that the last payment was made in 2016.[2]  *Id.* at ¶ 19.  Plaintiff further admits that the servicing rights of the two loans was transferred to Transworld after plaintiff and her mother default on the loans.  *Id*. at ¶ 20.

Plaintiff alleges that on February 1, 2019, she was sent demand letters by an unnamed agency on behalf of National Collegiate Student Loan Trust 2007-1

---

[2] Relying only upon conclusory allegations, plaintiff vaguely references filing lawsuits beyond the statute of limitations; however, the two state court complaints clearly were timely filed given plaintiff's complaint alleges the final payment date of October 6, 2016 and the state court complaints were filed within the four-year statute of limitations on written contracts.

("NCSLT 2007-1") and National Collegiate Student Loan Trust 2007-2 ("NCSLT 2007-2"). *Id.* at ¶ 21. Plaintiff further alleges that on October 14, 2019, she requested validation of the two loans and that Transworld responded by providing her documentation and requesting she contact Patenaude to discuss the accounts further. *Id.* at ¶ 22.

On October 21, 2019, NCSLT 2007-1, through Patenaude, filed a lawsuit in the Superior Court of California, County of San Bernardino captioned as CIV DS 1931160.[3] *See* Summons and Complaint attached hereto as Exhibit A. Also, on October 21, 2019, NCSLT 2007-2, through Patenaude, filed a lawsuit in the Superior Court of California, County of San Bernardino captioned as CIV DS 1931182. *See* Summons and Complaint attached hereto as Exhibit B.[4] On January 16, 2020, plaintiff filed an answer pro se. *See* plaintiff's state court answer attached hereto as

---

[3] "[A] court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and (2) matters in the public record." *Kumar v. Select Portfolio Servicing, Inc.,* No. SACV191121JVSADSX, 2019 WL 8217548, at *2 (C.D. Cal. Nov. 8, 2019) (citing *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) and *Lee v. City of L.A.,* 250 F.3d 668, 688-89 (9th Cir. 2001)). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003). Here, the Court can take judicial notice of the two state court complaints, plaintiff's answer and amended answer, and plaintiff's motion for leave to file cross claim.

[4] The two state court suits are collectively referred to herein as the "State Court Complaints".

Exhibit C.   On November 9, 2020, plaintiff filed an amended answer, and on November 10, 2020, plaintiff filed a motion for leave to file a cross claim.   *See* Exhibits D and E, respectively.   In the motion for leave to file cross claim, plaintiff asserted that she retained counsel in August 2020, and that she was made aware of her purported claims in August 2020.   *See* Ex. E, p. 3.   Plaintiff's counsel further noted in her declaration in support of the motion:

> At the time that Defendant answered the complaint in this action, she was unaware of the fact Plaintiffs had violated fair debt collection laws in filing this case. Once I was retained to represent Defendant, I notified her that she had an independent action. I am informed and believe, and on that basis state that Defendant first learned of the fact Plaintiffs' actions constituted an independent cause of action against Plaintiffs and Cross-Defendants by Defendant when I became counsel in August, 2020.

*See* Ex. E, p. 84.

On November 16, 2020, NCSLT 2007-1 and NCSLT 2007-2 moved to dismiss the State Court Complaints without prejudice and such relief was granted on November 18, 2020.  Plaintiff then filed the herein complaint on December 8, 2020 against Patenaude asserting violations of the FDCPA predicated exclusively upon the State Court Complaints filed against her.

///

///

///

### III.    STANDARD OF REVIEW

A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted.  *Kumar*, 2019 WL 8217548, at *2.  "A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory."  *Kendricks v. Collect Access, LLC*, No. 519CV01134ODWSHKX, 2021 WL 256802, at *2 (C.D. Cal. Jan. 26, 2021) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

The plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  In short, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a

cause of action will not do.… Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

In *Twombly*, the Supreme Court explained the rationale behind adopting a "plausibility" standard, as opposed to a "possibility" standard, in determining the sufficiency of a complaint. The Court reasoned that the "plausibility" standard serves the practical purpose of preventing a plaintiff who lacks a claim from causing a party to incur the expense of defending against a claim, and thereby increasing a case's settlement value, when the fact that no claim exists can be determined merely by examining the complaint itself. Indeed, when the complaint ultimately does not state a claim for which relief can be granted, such a deficiency should be exposed at a time when expenditures of time and money by the parties, and the court, are minimal. *See id.,* 550 U.S. at 557-58.

"The determination of whether a complaint satisfies the plausibility standard is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Kendricks*, 2021 WL 256802, at *2 (quoting *Iqbal*, 556 U.S. at 678). "[A] court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences." *Id.* (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

"Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled

by a communication.'"  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007)).  In addition, "[i]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her responses." *Id.* at 1034. "In other words, a debt collector's false or misleading representation must be 'material' in order for it to be actionable under the FDCPA." *Id.* at 1019.

## IV.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM THAT PATENAUDE VIOLATED THE FDCPA

### A. Plaintiff's Claims are Time Barred

The Ninth Circuit made clear in *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), that the filing of the lawsuit, rather than the date of service, is the operative date for starting the applicable statute of limitations where the claims are predicated upon the filing of a collection lawsuit, as they are here.  As noted in *Naas*, "[f]iling a complaint is the debt collector's last opportunity to comply with the Act, and the filing date is easily ascertainable." *Id.*

Plaintiff noticeably omits the dates the State Court Complaints were filed in her complaint, and, instead, references the dates of service.  As *Naas* instructs, the filing dates are operative for the purposes of evaluating the statute of limitations, not

8

the service dates.  Here, the State Court Complaints were filed by Patenaude on October 21, 2019, and plaintiff's complaint was not filed until December 8, 2020. Plaintiff's claims were undeniably filed beyond the FDCPA's 1-year limitation period.  *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability…within one year from the date on which the violation occurs.").  On that basis alone, plaintiff's complaint should be dismissed given that the statute of limitations is a threshold defense, and this Court need not even reach the merits of plaintiff's baseless claims.

To the extent that plaintiff attempts to rely upon the discovery rule, or equitable tolling, to save her otherwise time barred claim, neither the discovery rule nor the equitable tolling doctrine is applicable here.

As far as the discovery rule is concerned, the Supreme Court has unequivocally rejected application of the discovery rule doctrine to extend a limitation period for actions brought pursuant to the FDCPA.  *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (assessing "whether the 'discovery rule' applies to the FDCPA's limitations period," and concluding "[t]he FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened.").  The discovery rule cannot save plaintiff's FDCPA claim.

Any effort to extend the FDCPA limitation period under an equitable tolling theory fares no better.  Plaintiff's filings reflect she was aware at all times of Transworld's presence as her student loan servicer, and, more critically, that she was

aware of her purported claims well within the limitations period (notably, plaintiff's proposed cross claim would not have been timely either given it was filed November 10, 2020).  Because plaintiff admits that she was aware of these facts, there is no concealment supporting invocation of the equitable tolling doctrine.

"The party seeking equitable tolling bears the burden of showing that they are entitled to it."  *Faircloth v. AR Res., Inc.,* No. 19-CV-05830-JCS, 2020 WL 820307, at *8 (N.D. Cal. Feb. 19, 2020) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Id.* (quoting *Pace*, 544 U.S. at 418.  "To invoke the doctrine of equitable tolling, a party must allege that 'despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim.'"  *Id.* (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045-46 (9th Cir. 2011)).

Here, plaintiff contends that equitable tolling applies because "Patenaude concealed from Lindsey in [the State Court Complaints] that in fact Transworld was also practicing law in each of the actions."  *See* plaintiff's complaint, ¶¶ 26, 28, 34, 48.

Plaintiff's claim for the application of equitable tolling fails for several reasons.  Initially, her state court pleadings confirm that her attorney made her aware

of her alleged claims *within the limitations period* in August 2020.[5]  Even then, plaintiff waited until November 10, 2020 to attempt to assert a cross claim in the state court cases against NCSLT 2007-1, NCSLT 2007-2, Transworld, U.S. Bank and Asset Recovery Solutions, LLC, but failed to include Patenaude in that proposed claim.[6]  Plaintiff's complaint also confirms that she was communicating directly with Transworld in October 2019, that she requested validation of the accounts from Transworld, and that documents were provided to her including the credit agreements and the loan payment history reports in October 2019, so she was admittedly aware of Transworld's involvement as loan servicer.  *See* plaintiff's complaint, ¶ 22.

---

[5] Plaintiff appears to allege that her claim may not have arisen until her attorney made her aware in August 2020 or when Transworld's "Assurance of Discontinuance" with the Attorney General of the State of New York was made public September 11, 2020.  This argument is insufficient to toll the statute of limitations because both of these events occurred within the one-year limitations period, which would not have expired for an additional 6 weeks, until October 21, 2020.  The exercise of due diligence at that time could have, and should have, resulted in plaintiff filing a timely FDCPA suit.  And, other than the filing of the State Court Complaints, there were no further "communications" by Patenaude (or Transworld) with plaintiff upon which an FDCPA claim could be brought.  More, an FDCPA claim does not arise (or get tolled) when an attorney notifies their client they might have a claim.  *See Naas,* 130 F.3d at 893 and *Rotkiske,* 140 S. Ct. at 360.  Finally, the reference to the Assurances of Discontinuance as a basis for tolling the limitation period is a red herring, as there were no findings there that Transworld engaged in the practice (or unauthorized practice) of law, and Transworld's involvement in the servicing process for the National Collegiate Trust entities has always been publicly available information.

[6] Pursuant to California Code of Civil Procedure § 426.30, any related cause of action against NCSLT 2007-1 or 2007-2 would be barred as compulsory cross-claims.

Simply put, plaintiff was aware of Transworld's involvement in the servicing of her loans within the limitation period, plaintiff was specifically aware of the existence of claims within the limitation period and there is no plausible allegation that either Patenaude or Transworld concealed the existence of any claims from plaintiff.  Equitable tolling is inapplicable here.

Beyond that, plaintiff does not allege any diligence whatsoever or allege that she was unable to obtain vital information bearing on the existence of the claim, nor was any information concealed from her in any way.  Plaintiff answered the State Court Complaints on January 16, 2020, and then amended her answer on November 9, 2020 (while represented by counsel).  *See* Ex. C and D, respectively.

As such, the claims are time barred pursuant to the FDCPA's one-year statute of limitations and neither the discovery rule nor equitable tolling can resurrect these moribund claims.

## B.  Transworld is Not Engaged in the Practice of Law

The crux of plaintiff's complaint is that Transworld is allegedly engaging in the unauthorized practice of law, and does so by directing the actions of Patenaude. Even accepting these spurious claims as true, plaintiff has no private cause of action for the putative unauthorized practice of law, and plaintiff cannot bootstrap an alleged claim for the unauthorized practice of law into an FDCPA claim.

Initially, Patenaude is a California law firm subject to the California State Bar and Rules of Professional Conduct.  Pursuant to Rule 5.5, a member of the bar shall not aid any person or entity in the unauthorized practice of law.  As such, Patenaude is already regulated by the California State Bar Association and Rules of Professional Conduct, and maintains that its actions are in full compliance with the Rules.  The State Court Complaints were reviewed and executed by Patenaude attorneys under penalty of perjury.  *See* Ex. A and B, respectively.

Beyond that, there is no plausible allegation that Transworld is engaging in the practice of law. Business and Professions Code § 6125 provides: "No person shall practice law in California unless the person is an active licensee of the State Bar." "[T]he code provides no definition for the term 'practice law.'" *Altizer v. Highsmith*, 52 Cal. App. 5th 331, 339, 265 Cal. Rptr. 3d 832, 837 (2020).  In *Baron v. City of Los Angeles*, 2 Cal.3d 535, 542, 86 Cal. Rptr. 673, 469 P.2d 353 (1970), the California Supreme Court noted "the practice of law is the doing and performing services in a court of justice in any manner depending therein throughout its various stages and in conformity with the adopted rules of procedure.  But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in court." *Id.*  "The *Baron* Court then stated: '**In close cases, the courts have determined that the resolution of legal questions for another by advice and**

13

Memorandum in Support of Motion to Dismiss Plaintiff's Complaint

**action is practicing law if difficult or doubtful legal questions are involved which, to safeguard the public, reasonably demand the application of a trained legal mind**.'" *Id.* (emphasis added).  Acting in a "clerical" capacity, like Transworld does as a servicer, is not the practice of law.  *Id.*

Regardless, assuming plaintiff's allegations are correct regarding TSI's involvement in the litigation process, as loan servicer of the accounts, it does not amount to the unauthorized practice of law.  Transworld never filed suit in the state court cases, nor have they acted in a legal capacity – they are the loan servicer of the accounts and solely acted in that capacity.  Plaintiff acknowledges that Transworld is the post-default servicer for the National Collegiate Trust entities, including NCSLT 2007-1 and NCSLT 2007-2.  *See* plaintiff's complaint, ¶¶ 10, 10(a), and 10(c).[7]  Here, at best, plaintiff alleges that Transworld is actively involved in the decision making and discovery process, which it needs to be.  As the servicer of the loans and custodian of records, TSI reviews and executes affidavits and discovery responses.  However, Transworld is not resolving legal questions for another by advice, or taking any affirmative action, and is certainly not resolving difficult or

---

[7] Plaintiff references an agreement between Transworld and U.S. Bank, N.A., the special servicer for the National Collegiate Trust entities, that dictates Transworld's responsibilities as post-default loan servicer for the National Collegiate Trust entities, so Transworld indisputably had the authority to oversee the post-default servicing of the National Collegiate Trust loan portfolio.  Again, this relationship is not uncommon amongst servicers of other loan portfolios across the credit spectrum.

doubtful legal questions.  Nor is it holding itself out as a law firm, providing legal advice to any third party, or holding itself out to the public as a lawyer or law firm.

   Mortgage lenders, vehicle lenders, credit card lenders, and student loan lenders, all act through loan servicers, and employ similar processes and procedures. To impose liability on a loan servicer for engaging in the practice of law for involvement in the servicing process similar to Transworld's would have a chilling effect on loan servicers across the country, and would prevent law firms, servicers, and creditors from effectively, efficiently and accurately servicing loans.

## C. There is No Private Cause of Action for the Unauthorized Practice of Law

Even if plaintiff plausibly alleged that Transworld's role as a servicer crossed the line into the practice of law, which plaintiff does not, there is no private cause of action in California for engaging in the unauthorized practice of law.  *See Allen v. Rodey, Dickason, Sloan, Akin & Robb, P.A.,* No. CV093765PSGFFMX, 2010 WL 11515466, at *6 (C.D. Cal. Jan. 20, 2010) ("California does not provide a private right of action to allege a claim for the unauthorized practice of law.").  Because there is no viable cause of action for the underlying act, plaintiff cannot bootstrap an alleged violation of § 6125 into an FDCPA violation.

Plaintiff's complaint does make reference to but does not allege a violation of California Business and Professions Code § 17200 in arguing that the unauthorized

practice of law "constitute[s] 'unfair completion.'"  Critically though, plaintiff does not bring a claim under § 17200.  And any attempt to do so would fail, as there is no predicate FDCPA violation plausibly alleged when plaintiff's FDCPA claim is time barred.[8]  *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) ("A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.").  Thus, plaintiff has failed to allege any viable cause of action to enforce a claim arising from the unauthorized practice of law.

### D. Plaintiff's Claims are Barred by the *Noerr-Pennington* Doctrine and the "Litigation Privilege" of California Civil Code § 47

California Civil Code § 47(b) provides, in pertinent part, that a privilege attaches to a publication or broadcast made in any judicial proceeding.  Cal. Civ. Code § 47(b).  The litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Truong v. Mountain Peaks Fin. Servs., Inc.*, No. 3:12-CV-01681-WQH, 2013 WL 485763, at *7 (S.D. Cal. Feb. 5, 2013) (quoting

---

[8] Additionally, only equitable relief is available under § 17200 to private litigants.  *See Newport Components, Inc. v. NEC Home Elecs. (U.S.A.), Inc.*, 671 F. Supp. 1525, 1551 (C.D. Cal. 1987).

*Silberg v. Anderson*, 50 Cal.3d 205, 212, 266 Cal. Rptr. 638, 786 P.2d 365 (1990)).

"Under the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.* (citing *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)).

In *Linder v. Eason*, No. SACV171294DOCJDEX, 2018 WL 3816763, at *8 (C.D. Cal. June 29, 2018), the plaintiff alleged that the defendant was collecting on judgments that were improperly obtained and that contained false allegations in the actual pleadings.  The *Linder* court discussed the distinction between a plaintiff seeing to impose liability for the act of filing a lawsuit, like plaintiff does here, as opposed to attacking alleged misrepresentations in the pleadings and concluded: "the *Noerr-Pennington* doctrine ensures that persons are not punished for the act itself of filing a lawsuit."  *Id.* at *9.

Patenaude acknowledges that courts have found that the *Noerr-Pennington* doctrine and "litigation privilege" typically do not bar FDCPA claims.  However, given that plaintiff's FDCPA claim is bootstrapped to, and directly predicated upon, the alleged unauthorized practice of law claims, which are predicated on the filing of the State Court Complaints alone, the doctrines should apply with equal force here.  Unlike in *Linder*, plaintiff does not allege, nor can she, that there was any statement in the State Court Complaints that was false, deceptive or misleading.

## E. There Can be No Liability for the Simple Filing of a Lawsuit and Invocation of NCSLT 2007-1 and NCSLT 2007-2's Rights

To the extent that plaintiff alleges an ancillary claim that the filing of the State Court Complaints without providing all the supporting evidence is an FDCPA violation, this claim also fails.  Multiple courts across the country have found otherwise, and California state law confirms that the initial pleadings were sufficient.[9]  *See, e.g.*, *Richardson v. Midland Funding, LLC*, No. CIV. CCB–13–1356, 2013 WL 6719110, at *4 (D. Md. Dec. 18, 2013) *aff'd*, 583 Fed. Appx. 124 (4th Cir. 2014) ("A debt collector's mere failure to offer evidence sufficient to prove its claim at the time it files a complaint is not prohibited conduct under the FDCPA."); *Johnson v. BAC Home Loans Servicing, LP*, 867 F.Supp.2d 766, 781 (E.D.N.C. 2011) ("To the extent Plaintiffs' allegations imply the filing of a lawsuit without substantiating documentation is false, deceptive or misleading, Plaintiffs do not state a claim[.]"); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) ("filing of a lawsuit without the immediate means of proving the debt owed did not constitute a deceptive practice" under § 1692d or § 1692e); *Deere v. Javitch, Block & Rathbone LLP*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006) ("filing

---

[9] Patenaude attached copies of the complete credit agreements to the State Court Complaints and partial documentation confirming the chain of title.  Patenaude also *pled* that NCSLT 2007-1 and NCSLT 2007-2 are the current holders of the accounts.  *See* Ex. A and B, respectively.

a lawsuit supported by the client's affidavit attesting to the existence and amount of a debt, is not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable.  A defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or through discovery.  Deere does not allege that anything in the state court complaint was false, or that the complaint was baseless."); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 5537126, at *8 (N.D. Cal. Oct. 4, 2013), *aff'd in part*, 670 Fed. Appx. 573 (9th Cir. 2016) ("filing a debt collection lawsuit is not sufficient in and of itself to state a claim under section 1692d of the FDCPA."); *Mansfield v. Midland Funding, LLC*, No. 09CV358 L WVG, 2011 WL 1212939, at *5 (S.D. Cal. Mar. 30, 2011) ("a debt collector may file a debt collection action even if the debt collector does not at the time of filing have adequate proof to support the claim."); *Nickoloff v. Wolpoff & Abramson, L.L.P.*, 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007) ("A debt collector does not violate the FDCPA merely because it files a lawsuit without immediate means of proving the debt.").

Under California law, "a written contract is [usually] pleaded by alleging its making and attaching a copy which is incorporated by reference", "[h]owever, a written contract can also be pleaded by alleging the making and the substance of the relevant terms."  *Perry v. Robertson*, 201 Cal. App. 3d 333, 341, 247 Cal. Rptr.

74, 79 (Ct. App. 1988).  While not expressly required to do so, Patenaude attached the applicable credit agreement to the State Court Complaints, included documents reflecting the assignment of the accounts, and pled NCSLT 2007-1 and NCSLT 2007-2's right as assignee to enforce the credit agreements.  Nothing further was required under California law.  In fact, the attached exhibits were not even required under California law, and if anything, assisted the plaintiff in determining whether to demur to the claim.  *See id.* ("The purpose of the specific pleading of a written contract requirement is to permit the defendant to demur to the breach of contract claim based upon the construction of the text of the contract.").

Recently, in *Ngoc Jenny Tran v. Velocity Investments, LLC*, No. EDCV182257FMOSHKX, 2020 WL 7264840, at *2 (C.D. Cal. Oct. 23, 2020), Judge Olguin, addressed a similar claim where a state court defendant filed suit against a law firm and a debt buyer, and argued, in part, that the omission of chain of title documents to support a state court complaint was somehow a material violation of the FDCPA.  In rejecting that claim, Judge Olguin noted:

> As an initial matter, the State Court Complaint does not include a chain of title for the loan at issue…and plaintiff provides no authority for the proposition that the FDCPA requires that a chain of title be provided for the type of loan at issue in this case….Further, plaintiff does not explain,….how the alleged omission of the chain of title could have "frustrate[d her] ability to intelligently choose [] her response" to defendants' debt collection action. *See Donohue*, 592 F.3d at 1034. Here, the State Court Complaint informed plaintiff of the creditor to whom she owed repayment – Velocity….Plaintiff does not argue that

the debt is owed to someone other than Velocity....Thus, even assuming Velocity was required to include the chain of title in the State Court Complaint <u>and</u> there was an error in the chain of title, such an error would not be material under the circumstances of this case because there was no "confusion and delay in trying to contact the proper party concerning payment on [the] loan[.]" *Tourgeman*, 755 F.3d at 1121. In short, plaintiff's argument about the chain of title does not establish that defendants violated the FDCPA.

*Id.* at *6.

Here, plaintiff acknowledges she entered into the loan agreements with Bank of America, N.A. with her co-signer mother in January 2007, and May 2007, respectively, that payments were made up to October 6, 2016, and that they ultimately defaulted. *See* plaintiff's compliant, ¶¶ 16-17, 19-20. Nowhere in the Complaint does plaintiff allege that she does not owe NCSLT 2007-1 or NCSLT 2007-2 for the unpaid loans, or that some other entity is holding the accounts. Indeed, her original answer implies, as her complaint suggests, that she, and her co-signer mother were instead having financial difficulties. *See* Ex. C. Finally, she appears to confusingly reference that Patenaude demanded money in excess of the original loan disbursements (the State Court Complaints clearly seek interest, and the terms and conditions provide for it), but never states that she does not owe that amount. *See* plaintiff's complaint, ¶¶ 27(a) and (b).

As such, like with *Ngoc Jenny Tran*, plaintiff fails to plead that there are any *factual allegations* in the State Court Complaints that are false, deceptive or

misleading.  Even accepting plaintiff's allegations of Transworld's involvement in the litigation process as true for the motion to dismiss, there is still no assertion of how the representations in the State Court Complaints are false, deceptive or misleading or how plaintiff was prevented from meaningfully responding to the State Court Complaints.  Indeed, given the documents provided in response to her requests for validation, plaintiff had many of the documents needed to evaluate the State Court Complaints and to meaningfully respond.  Regardless, as noted in *Ngoc Jenny Tran*, the State Court Complaints were uncomplicated assertions of money being due and owing to NCSLT 2007-1 and NCSLT 2007-2, and plaintiff was not prevented in any way from meaningfully responding, which she did.

### F.  Plaintiff Has Withdrawn the Claim under § 1692e(9)

Plaintiff agreed to withdraw her claim under 15 U.S.C. § 1692e(9) during the meet and confer on this motion on March 12, 2021.

### G. Any Putative Violation Was Not Material Because Plaintiff Does Not Dispute Executing the Applicable Loan Documents or that She Owes the Accounts

In *Donohue,* the Ninth Circuit confirmed that even a false, but non-material statement is not actionable under the FDCPA:

> The purpose of the FDCPA, "to provide information that helps consumers to choose intelligently," would not be furthered by creating liability as to immaterial information because "by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Id.* at 757–

58. The Seventh Circuit framed materiality as a corollary to the well-established proposition that "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the [Act]—even if it is false in some technical sense." *Id.* at 758 (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009). Thus, "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Id.* The Sixth Circuit has reached the same conclusion. *See Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009) (concluding that a false but non-material statement is not actionable under § 1692e).

We agree with the approach adopted by the Sixth and Seventh Circuits…We now conclude that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f.

*Id.*, 592 F.3d at 1033 (9th Cir. 2010).

Here, the level of Transworld's involvement as loan servicer for NCSLT 2007-1 and NCSLT 2007-2, and whether Transworld was engaged in the practice of law (which is expressly denied), is completely immaterial to plaintiff's ultimate liability to NCSLT 2007-1 and NCLST 2007-2 on the two loans.  Indeed, plaintiff can point to no allegation *in the State Court Complaints* that is false, deceptive, or misleading.  Moreover, in plaintiff's complaint she *acknowledges* many of the allegations asserted in the State Court Complaints.  *See* plaintiff's complaint, ¶¶ 16, 17, 19, 21 (admitting entering into the two credit agreements with Bank of America, N.A., payment on the loans by the co-signer, and default on the loans).  The fact that Transworld was involved as loan servicer did not impair plaintiff's ability to effectively or meaningfully respond to the State Court Complaints, which she did.

23

## V.     Plaintiff's "Defendants' Class" Should be Stricken

Rule 12(f) authorizes courts to strike "from any pleading any insufficient defense or any redundant, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The Federal Rules provide a mechanism for exercising defective class allegations before discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009). Pursuant to Rule 23(c), "the court must—at an early practicable time—determine by order whether to certify the action as a class action." *Id.* A court "may strike impertinent matters from the pleadings to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Id.* "[A] court may deny class certification even before the plaintiff files a motion." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

Here, plaintiff seeks to certify a class of law firms, across the country, that file debt collection actions in coordination with loan servicer Transworld. *See* plaintiff's complaint, ¶ 52. Aside from the numerous merits issues already raised, plaintiff disregards that every state in this country has different rules and statutes on what constitutes the practice of law, so what may constitute the practice of law in California may not be the same in other states, which will require that this Court perform an individualized inquiry in each state to determine what constitutes the

practice of law and whether there is a private cause of action.[10]   Such individualized

issues centered on specific state rules demonstrate that the proposed defendant class

is unworkable, uncertifiable and the proposed class claims should be stricken.

WHEREFORE, Patenaude & Felix, A.P.C. respectfully requests that this

Court dismiss plaintiff's complaint with prejudice,[11] and for all other relief this Court

deems just and appropriate.

Dated:  March 12, 2021                         SESSIONS, ISRAEL & SHARTLE, L.L.P.

                                                        _/s/James K. Schultz_
                                                        James K. Schultz
                                                        Attorney for Defendant
                                                        Patenaude & Felix, A.P.C.

---

[10] Plaintiff also does not offer any guidance of how this Court would have jurisdiction over non-California law firm defendants.

[11] To the extent that any part of plaintiff's complaint survives dismissal, Patenaude requests that the "Defendants' Class" allegations be stricken.